14-2472-cv
*Hubbs v. Suffolk Cnty. Sheriff's Dep't*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued: April 16, 2015        Decided: June 2, 2015)

Docket No. 14-2472-cv

---

GREGORY HUBBS,

*Plaintiff-Appellant,*

– v. –

SUFFOLK COUNTY SHERIFF'S DEPARTMENT, DEPUTY SHERIFF KEITH
MORAN, #480, COUNTY OF SUFFOLK, JOHN DOE, DEPUTY SHERIFF
OFFICERS 1-2, DEPUTY SHERIFF THOMAS GUYDISH, #490, SERGEANT
ANDREW WALTHER, #S-63, DEPUTY SHERIFF ALLISON ZACCINO, #418,

*Defendants-Appellees.*[*]

---

Before: CALABRESI, CABRANES, and RAGGI, *Circuit Judges.*

Plaintiff-Appellant Gregory Hubbs asserts that he was severely beaten by Suffolk County deputy sheriffs while he was being detained in a holding cell at the Suffolk County Supreme Court following a court appearance. Hubbs sued the alleged perpetrators in the Eastern District of New York and the district court (Joanna Seybert, *Judge*) granted summary judgment to the defendants on the ground that Hubbs had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). We hold that defendants have failed to establish as a matter of law that administrative remedies were available to Hubbs. Accordingly, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

> NICHOLAS MINDICINO, Stoll, Glickman & Bellina LLP, Brooklyn, NY, *for Plaintiff-Appellant*

---

[*] The Clerk of Court is directed to amend the caption to conform to the listing above.

BRIAN C. MITCHELL, *Assistant County Attorney*, Hauppauge, NY (Dennis M. Brown, *Suffolk County Attorney*, *on the brief*), *for Defendants-Appellees*

---

CALABRESI, *Circuit Judge*:

Plaintiff-Appellant Gregory Hubbs asserts that he was severely beaten by Suffolk County deputy sheriffs while he was being detained in a holding cell at the Suffolk County Supreme Court following a court appearance. Hubbs sued the alleged perpetrators in the Eastern District of New York and the district court (Joanna Seybert, *Judge*) granted summary judgment to the defendants on the ground that Hubbs had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).[1]

On Hubbs's appeal from that judgment, the issue before us is what must be proffered to establish that an administrative remedy is "available" pursuant to the PLRA. Because failure to exhaust under the PLRA is an affirmative defense, and because the evidence adduced by the defendants—principally in the form of a conclusory affidavit—does not suffice to establish the defense as a matter of law, we vacate the summary judgment of the district court and remand for further proceedings consistent with this opinion.

---

[1] This section of the PLRA states, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

## BACKGROUND

### a.    Hubbs's Allegations of Assault[2]

In November 2009, Plaintiff-Appellant Gregory Hubbs was an inmate at the Suffolk County Correctional Facility ("SCCF") in Yaphank, N.Y., where he was being held pending conclusion of his criminal trial. Hubbs's trial was being conducted at the Suffolk County Supreme Court. Accordingly, on court days before and after his appearances, Hubbs was held in the custody of deputy sheriffs from the Suffolk County Sheriff's Department at a facility in that courthouse.

The correction division of the sheriff's department is responsible for the SCCF jails—one in Yaphank and one in Riverhead—and correction officers staff both facilities. The holding cell at the courthouse, on the other hand, is staffed by deputy sheriffs, who are not correction officers and who do not work in the correction division. The warden, a sheriff's department employee who serves under the county sheriff, is in charge of the SCCF jails.

On November 10, 2009, Hubbs's jury trial ended in conviction, but while awaiting transfer to the SCFF he was still in a holding cell at the courthouse. There, he struck up a conversation with Anthony Oddone, a detainee who was accused of murdering an off-duty Suffolk County correction officer. After learning that Hubbs had been convicted, Oddone offered some encouraging words, and Hubbs responded "I wish you the best." According to Hubbs, it was after this brief interaction with Oddone that he was dragged to another holding cell by several deputy sheriffs and beaten, supposedly in retaliation for his sympathy towards Oddone. Subsequently, Hubbs was taken to the emergency room. Doctors there

---

[2] For purposes of our review of the district court's judgment, the following account of the facts regarding the alleged assault is taken largely from Hubbs's civil complaint and from evidence provided in support of that complaint. We take no position on the merits of those allegations.

3

determined that he had suffered a contact seizure and identified head trauma with a laceration over the right eye, and swelling and bruising around the eye and ear.

Natalie Desir, a detainee in the cell down the hall from where the alleged assault took place, submitted an affidavit in which she stated that she saw the deputies drag Hubbs from the holding cell while telling him that they would "show you how to keep your fucking mouth shut" and saying of Oddone that "[h]e killed one of ours." Joint App'x at 50. She further averred that she saw the officers strike Hubbs in the face and then saw one of the deputies choke Hubbs "by placing his forearm under Mr. Hubbs['s] neck." *Id.* Hubbs then began to shake from what Desir believed to be a seizure, and she heard one of the officers say "enough you are going to kill him." *Id.*

When Hubbs regained consciousness, Desir yelled out to him that she had witnessed the entire incident, and Hubbs gave her his mother's telephone number. Desir contacted Ms. Hubbs that evening and reported the assault, and Ms. Hubbs contacted Christopher Cassar, the lawyer who had represented Hubbs at trial.

On November 12, Cassar sent a fax to County Sheriff Vincent DeMarco, informing him of the assault and requesting an investigation. In addition, Ms. Hubbs avers that she called the Yaphank jail sometime on or before November 17 to report the incident. The employee she spoke to, however, told her to raise the issue with internal affairs ("IA") at the sheriff's department because "[s]heriffs handle anything on the courtroom side of the facility." Joint App'x at 51.[3] On November 17, Ms. Hubbs called IA to request an investigation. Thereafter, she informed her son that she had tried to call the Yaphank jail

_____

[3] While vague, the most reasonable interpretation of this statement is that deputy sheriffs—as opposed to officers from the corrections division of the sheriff's department—are responsible for complaints arising from incidents that occur at the courthouse, including inside the courtrooms and holding cells.

but that they had told her to raise the issue with IA. Ms. Hubbs called IA two more times before November 27, the date on which IA sent an officer to interview Hubbs, and in both her calls, she was assured that the incident would be investigated. Ultimately, IA conducted an investigation and concluded that there had been no wrongdoing on the part of the deputies. Hubbs subsequently initiated this suit in the district court.

### b. The SCCF Inmate Grievance Procedure

The SCCF inmate grievance procedure is detailed in an "inmate handbook" given to all inmates. The grievance process has multiple stages. First, inmates are to try and resolve any issue with the officer assigned to their housing unit. If that is not possible, inmates may complete a grievance form that will be given to the sergeant assigned to the inmate's housing unit. If the sergeant fails to resolve the issue, the grievance is forwarded to the grievance coordinator, who may conduct an investigation and will provide a written determination. If the inmate disagrees with the determination, it may be appealed to the warden, who will provide his own written determination within 5 days. Finally, the inmate may appeal to the State Commission of Correction.

The handbook also informs inmates that some issues cannot be grieved through the SCCF system:

> THE FOLLOWING DECISIONS WILL NOT BE SUBJECT OF A GRIEVANCE AND THEREFORE MAY NOT BE APPEALED TO THE WARDEN OR THE CITIZENS POLICY AND COMPLAINT REVIEW COUNCIL . . . . Issues that are outside the Warden's control.

Joint App'x at 83.

5

### c. Proceedings in the District Court

The district court granted summary judgment to defendants on the ground that Hubbs had failed to exhaust his administrative remedies as required by the PLRA. Most relevantly for purposes of this appeal, the court ruled that the SCCF grievance procedures detailed in the handbook applied to Hubbs's complaint and that administrative remedies were thus "available" and had to be exhausted. To arrive at this conclusion, the district court relied largely on an affidavit submitted in support of the defendant's summary judgment motion by Craig Rosenblatt, the SCCF Grievance Coordinator. Mr. Rosenblatt's affidavit stated in relevant part:

> Complaints made by inmates involving acts or occurrences that take place while the inmate is in the custody of the Suffolk County Sheriff's Department are issues within the control of the Warden. . . .

> Any grievance filed by an inmate within five (5) days of the act or occurrence giving rise to the grievance, concerning an act or occurrence that took place while the inmate was detained in the County Court Holding facility would be accepted by the grievance coordinator and a determination would be made regarding what action should be taken to resolve and rectify the matter.

Joint App'x at 95.

The court further concluded that the inmate handbook did not establish that grievances were unavailable because, under its reading, the handbook only barred *appeals* of matters outside the warden's control, and did not bar *initial grievances* of such matters. Thus, despite the fact that Rosenblatt had never been disclosed to Hubbs as a projected witness, and was therefore never deposed, the court ruled that Hubbs proffered only "speculation" to counter Rosenblatt's affidavit, and this was insufficient to establish that the grievance process was unavailable to Hubbs. *See Hubbs v. Cnty. of Suffolk*, No. 11-CV-6353, 2014 WL 2573393, at *4 (E.D.N.Y. June 9, 2014).

6

## DISCUSSION

Hubbs argues on appeal that summary judgment was improper because administrative remedies for grievances that stem from events in the holding cell of the county court were, as a matter of law, unavailable to him. Hubbs also contends that the PLRA is inapplicable to his suit because his claims were not "brought with respect to prison conditions." 42 U.S.C. § 1997e(a). In the alternative, he contends that his failure to exhaust should be excused pursuant to our holding in *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004), which establishes a three-part inquiry in cases where a prisoner seeks to counter the contention that he has failed to exhaust available administrative remedies.

We review a district court's grant of summary judgment de novo, construing all evidence in the light most favorable to the non-moving party, *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 173 (2d Cir. 2006), and affirming only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The PLRA, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Accordingly, the PLRA does not require the exhaustion of all administrative remedies, but only those that are "available" to the inmate. "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'" *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004), *quoting Booth v. Churner,* 532 U.S. 731, 738 (2001).

7

Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements. *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999) ("[W]here a grievance procedure is informally established by the warden of a prison and therefore not ascertainable by examination of statutes or regulations, the existence of the procedure may be a matter of fact, but whether it qualifies as an administrative remedy that must be exhausted under Section 1997e(a) is a question of law."). Because failure to exhaust is an affirmative defense, *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), defendants bear the initial burden of establishing, by pointing to "legally sufficient source[s]" such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute, *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003); *see also Snider*, 199 F.3d at 114. If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact. *Hemphill*, 380 F.3d at 687–88.

As an initial matter, we note that the defendants have failed to identify, either before the district court or on appeal, any Suffolk County statutes or regulations showing that administrative remedies were available for events that took place in the county court holding facility. *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 7032.1 (delegating development of formal grievance procedures for local jails to "the chief administrative officer of each local correctional facility"). They have, therefore, forfeited any arguments that such statutory remedies were available. *See United States v. Litwok*, 678 F.3d 208, 216 (2d Cir. 2012).

8

Defendants instead rely, as the district court did, on the inmate handbook and on the Rosenblatt affidavit. Both, however, fall well short of establishing as a matter of law that the SCCF grievance procedures applied to the court holding facility. As to the first, the handbook's plain terms state that issues outside the warden's control "will not be [the] subject of a grievance." Joint App'x at 83 (emphasis omitted). Thus, far from establishing the availability of a grievance procedure at the court holding facility, the handbook does nothing more than raise the question defendants would have it answer—namely, was what allegedly happened to Hubbs within the control of the warden?

The Rosenblatt affidavit similarly fails to demonstrate that, even in the absence of a statutory or regulatory scheme, SCCF practice was to accept and handle grievances arising from occurrences in the court holding facility while inmates were in the custody of the sheriff's department, and provide redress when merited. The carefully worded—or perhaps, purposely vague—affidavit merely states that a grievance "concerning an act or occurrence that took place while the inmate was detained in the County Court Holding facility would be accepted by the grievance coordinator and a determination would be made regarding what action should be taken to resolve and rectify the matter." Joint App'x at 95-96. That statement does not address whether any remedies were in fact available for such a grievance and was thus insufficient to support the district court's legal determination that remedies were available to Hubbs.

Significantly, defendants produced no evidence that grievances pertaining to inmate detention in the court holding facility had been filed and reviewed in the past, much less that any relief had been afforded in such situations. Indeed, some evidence suggested the opposite, as Ms. Hubbs testified that she was told by staff at Yaphank to address her

9

complaints to internal affairs because "[s]heriffs handle anything on the courtroom side of the facility." Joint App'x at 51.

Moreover, the affidavit's assertion that complaints would be "accepted by the grievance coordinator" conflicts with the process outlined in the inmate handbook, which requires inmates first to raise issues with the officer assigned to their housing unit, and then to submit a grievance form to the sergeant assigned to the housing unit, before the grievance eventually makes its way to the grievance coordinator. Defendants have offered no explanation as to why, if the SCCF grievance process so clearly applied to the court holding facility, initiating that process would require an inmate to follow different procedures than those specified in the inmate handbook. Indeed, this discrepancy highlights another problem with the existing grievance procedures detailed in the handbook, for if they were meant to apply to events at the court holding facility involving sheriff's deputies, it makes little sense to require inmates first to raise such issues with lower ranking correction officers in the Yaphank jail. Rosenblatt appears to concede this anomaly, but his proffered remedy—that grievances be submitted directly to the grievance coordinator—appears nowhere in the handbook and is not intuitively obvious.

Finally, while the affidavit declares that "[c]omplaints made by inmates involving acts or occurrences that take place while the inmate is in the custody of the Suffolk County Sheriff's Department are issues within the control of the Warden," Joint App'x at 95, that averment states a legal conclusion (about what constitutes control) that is insufficient to support the district court's ruling. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 451 (2d Cir. 1999)(holding affidavits based on conclusory allegations insufficient at summary judgment). And the defendants did not allege facts (let alone provide evidence) that might have given

10

this legal conclusion some basis. Rosenblatt's affidavit, for instance, fails to address whether the deputy sheriffs who allegedly assaulted Hubbs fell within the warden's chain of command. And again, the available evidence suggests otherwise, as it was internal affairs of the Sheriff's Department, not the warden, that conducted the only investigation that took place in this case. Accordingly, we conclude that the defendants failed to meet their burden of establishing that the SCCF grievance procedures applied at the court holding facility where Hubbs alleges he was beaten. *See Mojias*, 351 F.3d at 610; *Snider*, 199 F.3d at 113-14 (a district court is "obligated to establish the availability of an administrative remedy from a legally sufficient source" before it may dismiss a prisoner's complaint for failure to exhaust his administrative remedies).

We further conclude that the evidence proffered by the defendants did not suffice to raise a factual question on this issue. Moreover, no reason has been suggested why defendants should now be afforded an opportunity to do so. Thus, quite apart from the many factual questions Hubbs has raised, we hold that, on the record before us, no administrative remedies were available to him, and there was thus nothing for him to exhaust. Hubbs is therefore free to proceed with the merits of his suit in federal court.

The district court's insistence that Hubbs offer more than mere "speculation" that remedies were unavailable, as well as its apparent analysis of unavailability as an exception to the exhaustion requirement, gives us the opportunity, in closing, to clarify the framework under which courts are to analyze whether an administrative remedy was "available" for purposes of the PLRA. The burden, we repeat, is on the defendant to establish at the outset that an administrative remedy was "available" in the sense that a grievance policy or procedure existed and covered the dispute at hand. Only if a court determines that he has

carried that burden by reference to "a legally sufficient source," *Mojias*, 351 F.3d at 610, can it proceed to consider any exceptions. Here, by contrast, the district court erroneously accepted the vague and conclusory statements in the Rosenblatt affidavit as sufficient to meet defendant's burden, and thus prematurely placed the onus on Hubbs to prove an exception to exhaustion.

Because we hold that defendants failed as a matter of law to establish from a legally sufficient source that administrative remedies were available in these circumstances, and that summary judgment was thus improper, we need not consider Hubbs's remaining arguments regarding the reach of the PLRA or the exceptions to the exhaustion requirement.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.