*Brown v. Halpin*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2017

(Argued: November 21, 2017      Decided: March 15, 2018)

Docket No. 16-3615

_____

VIRGINIA BROWN,

*Plaintiff-Appellee,*

– v. –

BRENDA HALPIN, STATE OF CONNECTICUT,

*Defendants-Appellants,*

OFFICE OF THE STATE COMPTROLLER, STATE EMPLOYEES RETIREMENT COMMISSION, KEVIN LEMBO, IN HIS INDIVIDUAL CAPACITY, P. MARTHA CARLSON, IN HER INDIVIDUAL CAPACITY, NATALIE BRASWELL, IN HER INDIVIDUAL CAPACITY, LINDA YELMINI, IN HER INDIVIDUAL CAPACITY, STATE OF CONNECTICUT,

*Defendants.*

_____

B e f o r e:

KATZMANN, *Chief Judge*, WALKER, CALABRESI, *Circuit Judges*.

_____

Defendants Brenda Halpin and the State of Connecticut appeal from the decision of the United States District Court for the District of Connecticut (Underhill, *J.*) denying their motion to dismiss plaintiff Virginia Brown's claims of First Amendment retaliation and violation of Connecticut General Statutes § 31–51q. Halpin asserts on appeal that she is entitled to qualified immunity, and the State contends that it is guarded from liability pursuant to the doctrine of sovereign immunity. We hold that Halpin's appeal is premature because her qualified immunity defense rests on disputed factual allegations. Although we have jurisdiction to hear the State's sovereign immunity defense, we find that Brown has alleged misconduct falling within the scope of § 31–51q, which provides a limited waiver to the State's sovereign immunity. We accordingly dismiss Halpin's appeal for lack of jurisdiction and affirm the judgment of the district court denying the State's motion to dismiss Brown's claims under § 31–51q.

———————————

TODD D. STEIGMAN, Madsen, Prestley & Parenteau, LLC, Hartford, CT, *for Plaintiff-Appellee.*

ANN E. LYNCH (Josephine S. Graff, *on the brief*) Assistant Attorney General, *for* George Jepsen, Attorney General, Hartford, CT, *for Defendants-Appellants.*

———————————

PER CURIAM:

In this interlocutory appeal, we are called upon to address claims of First Amendment retaliation and violations of Connecticut state law, and defenses of qualified immunity and state sovereign immunity. We conclude that we lack jurisdiction to consider the qualified immunity defense at this time—when we

must accept plaintiff's allegations as true—because it depends on the resolution of factual disputes. Although we conclude that we have jurisdiction to address the merits of the state sovereign immunity defense, we find that the district court committed no error in finding that the defense is unavailable at this phase of the litigation.

Plaintiff-appellee Virginia Brown was hired by defendant-appellant the State of Connecticut in September 2012 as a "staff attorney II" in its Retirement Services Division (the "Division"). App. 378. The Division is part of the Office of the State Comptroller (the "Comptroller") and administers the state's retirement systems, which include the State Employees Retirement System ("SERS") and the Connecticut Municipal Employees Retirement System ("CMERS").

Brown was responsible for providing legal services to the Comptroller and Connecticut State Employees Retirement Commission (the "Commission"), and her official duties included:

a. Working with outside counsel . . . [on] tax issues relating to SERS;
   . . .
c. Designing, drafting and implementing corrective policies and procedures for the administration of the Retirement Systems for the Commission;

. . .

    e.  Providing legal advice to the Commission and the Comptroller with respect to all aspects of the administration of the Retirement Systems, including preparing legal memos, summaries and analyses;

    f.  Providing guidance to [the] Division's internal investigator with regards to the disability retirement benefits, including disability fraud investigations, twenty-four (24) months reviews/investigations and collection of overpayments[.]

*Id.* at 379. Brown reported directly to defendant-appellant Brenda Halpin, the Director of the Division.

In October 2012, approximately one month after her hiring, Brown began making complaints that SERS was being improperly administered. Under Connecticut law, a participant in the program is eligible to receive benefits beyond the first 24 months only if he or she is "totally disabled for any suitable and comparable job." Conn. Gen. Stat. §§ 5-169(a); 5-192p(b). However, the Comptroller was allowing participants to remain in the program so long as the retiree was disabled from performing his or her "own occupation." App. 381.

Brown subsequently prepared written materials for the Commission explaining that an incorrect standard was being applied. Before she sent the materials, however, she first provided them to defendant Linda Yelmini and

4

counsel for the public employees' union. Yelmini was a Commission trustee, served on the Commission's "Personnel and Legal Subcommittee," and was the Director of the Office of Labor Relations ("OLR") for the state. *Id.* at 374. In these capacities, "it was a common practice for . . . Yelmini to share information and make decisions collectively with the leadership of the Comptroller and the Division regarding the administration of the Retirement Systems." *Id.* at 375. Yelmini also "routinely gave instructions regarding the administration of the Retirement Systems directly to Defendant Halpin and Division staff," and when "Yelmini issued instructions to the Division, those instructions were generally followed." *Id.* at 376.

Brown alleges that Deputy Comptroller P. Martha Carlson subsequently notified her, presumably at Yelmini's request, that the materials prepared by Brown would not be provided to the Commission unless Brown changed them to "support[] the incorrect 'own occupation' . . . [s]tandard." *Id.* at 384. Carlson stated that she "did not care that the Commission was breaching its fiduciary duty by violating the terms of the retirement plan[] [and] state and federal tax laws, and that it was 'their problem' as long as the . . . [s]tandard supported the

5

[public employee] Union's interests." *Id.* at 383. Carlson further ordered Brown to include in the materials the "false statement that the SERS plan provisions state that after twenty-four (24) months, disability retirement continued if the retiree was disabled from performing his/her 'own occupation,'" *id.* at 385, and that Brown remove "accurate factual information regarding the financial cost to the State and to the retirement plan and its members" of using the incorrect standard. *Id.* at 385-86.

Brown refused, and brought her complaints to her supervisor, defendant Halpin, Comptroller Kevin Lembo, and the Assistant Comptroller, General Counsel, and Ethics Liaison at the Comptroller, Natalie Braswell. Each of these individuals admitted that the Comptroller was improperly administering SERS. Brown's concerns were not limited to SERS, and she raised similar complaints about the administration of CMERS during the same period.

Brown subsequently disclosed the issues she had identified to the State of Connecticut Office of the Auditors of Public Accounts (the "Auditors") in July 2013. Brown alleges that "[i]t was not part of [her] ordinary job duties to disclose improper administration of the Retirement Systems, or violations of state law, or

6

federal tax laws, to the Auditors," and "prior to July of 2013, [Brown] had never communicated with [them]." *Id.* at 392. Brown nonetheless provided "the Auditors with all of the corrective policies and procedures that she had designed, drafted and attempted to implement in early 2013 concerning the administration of the Retirement Systems, but which were blocked from being presented to the full Commission." *Id.* at 393.

Brown alleges that members of the Division and Comptroller subsequently retaliated against her by systematically stripping her of job responsibilities. Brown filed a whistleblower complaint with the Auditors under Connecticut General Statutes § 4-61dd on December 26, 2013, and her position in the Division was eliminated in December 2014. Although Brown then transferred to another state agency, she lost two credited years of service for the purpose of eligibility for compensation and benefits.

Brown filed an action in Connecticut state court on May 14, 2015 alleging, *inter alia*, that defendants Halpin, Yelmini, and the State of Connecticut retaliated against her in violation of the First Amendment and Connecticut General Statutes § 31–51q, which creates a cause of action for violation of the right to free

7

speech under both the United States and Connecticut Constitutions. The defendants removed the case to federal court and moved to dismiss the suit. The district court granted the motion to dismiss as to Yelmini, but denied the motion by Halpin and the State of Connecticut.[1] *See Brown v. Office of State Comptroller*, 211 F. Supp. 3d 455, 460 (D. Conn. 2016).

The district court found that Brown had stated a First Amendment claim against defendant Halpin with regard to two categories of protected speech: her refusal to make "false" statements and her complaints to the Auditors. With regard to the first category, the court noted that pursuant to our decision in *Jackler v. Byrne*, 658 F.3d 225 (2d Cir. 2011), "a public employee has a First Amendment right 'to refuse to retract a report [to the police that] he believes is true, to refuse to make a statement that he believes is false, and to refuse to engage in unlawful conduct' under the guise of his job responsibilities." *Brown*,

---

[1] In dismissing the claims as to Yelmini, the court found that although Brown sufficiently alleged that Yelmini was aware of Brown's protected speech, the pleadings "fail[ed] to establish that Yelmini directly participated in the adverse action against Brown." *Brown v. Office of State Comptroller*, 211 F. Supp. 3d 455, 477 (D. Conn. 2016).

211 F. Supp. 3d at 470 (quoting *Jackler*, 658 F.3d at 241). The court further found that *Jackler* was applicable to Brown's speech because she "refused to comply with requests to alter her legal memoranda in a way that all parties knew would be materially false and/or misleading," *id.* at 471, and did so because of the "potential" that she would violate state and federal law. *Id.* at 470. The court also held that Halpin was not entitled to qualified immunity on this claim "[b]ecause *Jackler* was decided prior to Halpin's conduct." *Id.* at 475.

The court likewise held that Brown's complaints to the Auditors were protected. The court noted that the pleadings do "not . . . admit that [Brown] is under an employment obligation to report misconduct to the Auditors," *id.* at 468, and concluded that at the motion to dismiss stage it "must take as true the allegations that Brown was not speaking pursuant to her official duties," *id.* at 474. The court further found that Halpin was not entitled to qualified immunity because after the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), "all reasonable officials were put on notice that a public employee's speech on a matter of public concern would be protected so long as the speech

was made as a citizen and not pursuant to the employee's official duties." *Brown*,

211 F. Supp. 3d at 473.

The court lastly concluded that Brown had stated a claim against the State

of Connecticut for violation of Connecticut General Statutes § 31–51q. The court

found that even if Brown's speech was not protected by the First Amendment,

her complaints were protected under the Connecticut constitution as speech

concerning "official dishonesty," *id.* at 478-79, and concluded that the State had

improperly "disciplined" Brown for making such speech because "her transfer

caused her a loss of benefits and prevented her from being eligible for a

promotion," *id.* at 480. Halpin and the State of Connecticut subsequently filed

this interlocutory appeal.

We conclude that we lack jurisdiction to hear Halpin's interlocutory

appeal. "Qualified immunity shields federal and state officials from money

damages unless a plaintiff pleads facts showing (1) that the official violated a

statutory or constitutional right, and (2) that the right was 'clearly established' at

the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court has jurisdiction

over interlocutory appeals based on qualified immunity when the defense can be decided based on questions of law and is not dependent on the resolution of factual issues. *Bolmer v. Oliveira*, 594 F.3d 134, 140-41 (2d Cir. 2010); *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995). A defendant presenting an immunity defense on a motion to dismiss must therefore show not only that "the facts supporting the defense appear on the face of the complaint," but also that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). "[I]f a factual determination is a necessary predicate to the resolution of whether immunity is a bar, review is postponed and we dismiss the appeal." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 82 (2d Cir. 2007) (internal quotation marks omitted).

The defendants contest the district court's interpretation of *Jackler*. We need not reach this question, however, because at this stage factual disputes preclude resolution of whether Halpin is entitled to qualified immunity. With regard to the first category of speech, Halpin argues that Brown was not ordered to make "false" statements because reasonable people can disagree as to the

11

meaning of the relevant Connecticut statutes and Yelmini, the alleged mastermind behind the fraudulent scheme, believed that the "own occupation" standard was accurate.[2] Halpin thus characterizes this appeal as a simple difference of opinion: Brown's "interpretation of the state statute differed from the interpretation of Ms. Yelmini, one of [the Commission's] trustees. [Brown] was told to stop writing memorand[a] to [the Commission] advocating [Brown's] interpretation over Ms. Yelmini's." Defs.' Reply Br. at 18. While it may be true that Yelmini honestly believed that retirees are entitled to benefits under Connecticut law if they cannot perform their "own occupation," this conclusion is not evident on the face of the pleadings. The question of whether Halpin is entitled to qualified immunity is accordingly not a pure question of law that can be decided on interlocutory appeal because it depends on the resolution of a factual dispute: whether the proposed revisions to Brown's memoranda were false.

---

[2] We note that Halpin does not dispute that Brown would have been subject to liability had she made false statements to the Commission.

We likewise find that factual disputes preclude determination at this time as to whether Brown's second category of speech, her statements to the Auditors, was protected. In order to be entitled to First Amendment protection, a public employee must show, among other factors, that he or she "spoke as a citizen." *Garcetti*, 547 U.S. at 418. If the "speech at issue is itself ordinarily within the scope of an employee's duties," it is not afforded constitutional protection. *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014). The question of whether one was speaking pursuant to official job duties is "largely a question of law for the court." *Jackler*, 658 F.3d at 237. However, this legal analysis is informed by factual considerations. *See Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012). Here, although Brown alleges that speaking to the Auditors was outside of her job responsibilities, Halpin insists that Brown spoke "with the state auditors because she was in an official position that required . . . her to do so," Defs.' Br. at 20. A factual determination on this point is accordingly "a necessary predicate to . . . whether immunity is a bar," *Rowland*, 494 F.3d at 82, and Brown's written job responsibilities are sufficiently ambiguous that we cannot resolve this dispute at this phase of the litigation. We must thus dismiss Halpin's appeal.

We next turn to whether we have jurisdiction to hear the State's sovereign immunity defense. The State did not raise this defense below and instead argued that Brown had failed to state a claim under § 31–51q because she had not shown, *inter alia*, that she had been "disciplined or discharged." App. 414; *see D'Angelo v. McGoldrick*, 685 A.2d 319, 320 (Conn. 1996) ("General Statutes § 31–51q provides a cause of action for damages for an employee who has been disciplined or discharged on account of the exercise by such employee of various constitutional rights including the freedom of speech."). The State now portrays its argument as a defense of sovereign immunity.

"[S]overeign immunity is a jurisdictional defect" and therefore the defense "can be raised at any time." *Leonhard v. United States*, 633 F.2d 599, 618 n.27 (2d Cir. 1980). Although Brown disputes whether the State has accurately characterized its argument, the Connecticut Supreme Court has held that the failure to establish one of § 31–51q's essential elements is a jurisdictional defect. *Conboy v. State*, 974 A.2d 669, 675-76 (Conn. 2009). We therefore conclude that the State has appropriately characterized its argument as a sovereign immunity defense and that we have jurisdiction to hear the State's interlocutory appeal.

14

We nonetheless find that the district court correctly held that Brown has alleged misconduct falling within the scope of § 31–51q.[3] The proper interpretation of § 31–51q is a state law question that we review *de novo. See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006). Although the word "discipline" is not statutorily defined, Connecticut courts have interpreted the term to "involve[] affirmative acts of punishment that (at least while the punishment is being inflicted) leave the recipients in a less happy state than that which they enjoyed before the punishment began." *Bombalicki v. Pastore*, No. 378772, 2000 WL 726839, at *3 (Conn. Super. Ct. May 10, 2000); *McIntyre v. Fairfield Univ.*, No. CV 020391471, 2003 WL 1090690, at *2 (Conn. Super. Ct. Mar. 3, 2003).

---

[3] In coming to this conclusion, we do not decide whether the district court correctly held that Brown's allegations "that the defendants eliminated her job responsibilities, isolated her from her colleagues, issued a negative performance review rating, and issued her a letter of counseling" do not "rise[] to the level of discipline or discharge as contemplated by the Connecticut courts." *Brown*, 211 F. Supp. 3d at 479. That determination is not the subject of the instant interlocutory appeal.

We agree with the district court that Brown's allegation that the "transfer caused her a loss of benefits and prevented her from being eligible for a promotion" is sufficient to establish "an affirmative act of discipline under section 31–51q." *Brown*, 211 F. Supp. 3d at 480 (internal quotation marks omitted). Brown's transfer did not merely maintain the status quo. *See Pastore*, 2000 WL 726839, at *1, 3-4 (holding § 31–51q inapplicable to "employers who fail to promote employees"); *McIntyre*, 2003 WL 1090690, at *2–3 (concluding that university had not "disciplined" plaintiff by denying tenure and declining to renew the plaintiff's time-limited employment contract). Brown instead alleges that because of the transfer she lost two credited years of service for the purpose of promotion. This is sufficient to constitute an act of "discipline" under § 31–51q.

## CONCLUSION

Because the availability of qualified immunity cannot now be determined as a matter of law, we dismiss Halpin's appeal for lack of jurisdiction. We affirm the judgment of the district court denying the State's motion to dismiss Brown's claims under Connecticut General Statutes § 31–51q.

16