17-2884-pr
*Romano v. Ulrich*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of July, two thousand nineteen.

Present:
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

─────────────────────────────────────

ANTHONY ROMANO,

> *Plaintiff-Appellant*,

v.                                                                17-2884-pr

KEVIN ULRICH, C.O., JOSEPH CIANCI, C.O., GARY COVIELLO, C.O., DANIEL LEONARD, C.O., ROY BELL, C.O., GREGORY CARNEY, C.O., JEFFREY HAZARD, BRIAN FEENEY, JEFFREY LACAPRUCCIA, JEFFREY MILLER, MARK CUNNINGHAM,

> *Defendants-Appellees*.

─────────────────────────────────────

For Plaintiff-Appellant:              JOHN W. CERRETA, (Alyssa A. Helal, *on the brief*), Day Pitney LLP, Hartfod, CT.

For Defendants-Appellees:         JONATHAN D. HITSOUS, (Andrea Oser, *on the brief*), *for* Barbara D. Underwood, Attorney General for the State of New York, Albany, NY.

1

Appeal from a judgment of the United States District Court for the Western District of New York (Wolford, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED**. We **REMAND** to the district court for further proceedings consistent with this order.

Plaintiff-Appellant Anthony Romano ("Romano") appeals from a judgment of the United States District Court for the Western District of New York, entered August 29, 2017, dismissing his civil rights claims on summary judgment after determining that he did not exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), *see* 42 U.S.C. § 1997e. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, and recount them here only as necessary to explain our decision.

\* \* \*

Under the PLRA, an inmate may not bring a suit in federal court with respect to prison conditions unless he has previously exhausted administrative remedies. *See id.* § 1997e(a). In *Ross v. Blake*, the Supreme Court abrogated this Court's then-existing exception to the requirement of exhaustion, *i.e.*, that a plaintiff's failure to exhaust could be excused under certain "special circumstances," after concluding that the PLRA establishes a "mandatory exhaustion regime[]." *See* 136 S. Ct. 1850, 1857, 1858 (2016). Nevertheless, the Court observed that the statute contains its own "textual exception," in that it only requires an inmate to exhaust "available" remedies. *See id.* at 1858. According to *Ross*, an administrative remedy may be deemed "unavailable" when (1) "it operates as a simple dead end"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates

2

from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. We have suggested that "the three circumstances discussed in *Ross* do not appear to be exhaustive." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016).

"We review a district court's grant of summary judgment *de novo* . . . construing all evidence in the light most favorable to the non-moving party," which in this case is Romano. *Ruggiero v. County of Orange*, 467 F.3d 170, 173 (2d Cir. 2006). "Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (internal quotation marks, brackets, and citations omitted). However, even if a defendant establishes the existence of an applicable procedure, "administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact." *Id.*

A procedure for inmate grievances is laid out in New York's Compilation of Codes, Rules and Regulations ("NYCRR"). *See* NYCRR tit. 7, § 701.1 *et seq.* Broadly speaking, the Inmate Grievance Program ("IGP") lays out a three-level system of redress: (1) grievances are sent to the inmate grievance resolution committee ("IGRC"); (2) on appeal, the inmate may take his complaint to the facility superintendent; and (3) "if still not satisfied, an inmate may appeal to a committee of central office staff acting on behalf of the commissioner." *Id.* § 701.1(c). A grievance must be submitted within twenty-one days of the complained-of event. *Id.* § 701.5(a)(1). An inmate may request an exception to the time limit for filing a grievance, but

such an exception may be made only for "mitigating circumstances," and only if the request is made within forty-five days of the alleged occurrence. *Id.* § 701.6(g). "The complaint may only be filed at the facility where the inmate is housed even it pertains to another facility." *Id.* § 701.5(a)(1). And any appeal of a grievance must be filed at the facility where the original grievance was filed, even if the inmate has been subsequently transferred. *Id.* § 701.6(h).

Although the policy has since been changed, at the time Romano was transferred to the custody of New York's Office of Mental Health ("OMH") it is undisputed he could not have filed a grievance through the Department of Corrections and Community Supervision's ("DOCCS's") IGP. *See* Def.-Apps.' Brief at 7 n.2. The parties focus in their briefing to this Court on whether or not DOCCS's administrative procedures are "unavailable" *whenever* DOCCS unilaterally and without notice transfers an inmate during a grieving period such that the inmate is no longer able to file a grievance, regardless of DOCCS's motivation. We see no reason to address this question on the present record. On the particular facts of this case, Romano's transfer may have been neither unilateral nor lacking notice.

When an inmate is transferred from DOCCS custody and into the custody of OMH, another process comes into play. According to New York Correction Law § 402, a superintendent cannot transfer an inmate out of DOCCS custody for mental health reasons without first receiving a certificate from an examining physician, which will then be given to a judge. *See* N.Y. Corr. § 402(1), (3). "Upon every such application for such an order of commitment, notice thereof in writing, of at least five days, together with a copy of the petition, shall be served personally upon the alleged mentally ill person," who is not only entitled to request a hearing with judicial review, but is also required to be informed of his entitlement to make such a request. *Id.* § 402(3).

4

Under § 402, Romano should have received at least five days' notice of his transfer, as well as the ability to contest it. Provided the required notice was given and Romano had access to information that made clear that he would be unable to file a grievance upon his transfer outside of DOCCS, *see Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (determining that exhaustion "means using all steps that the agency holds out, and doing so *properly*" (internal quotation marks omitted)), we cannot see how Romano could show that DOCCS's procedure was unavailable to him on the facts of his case. *Cf. Hill v. Curcione*, 657 F.3d 116, 124-25 (2d Cir. 2011) (taking no issue with inmate grievance procedures that established a five-day period to file a grievance).

Unfortunately, given Romano's *pro se* status for much of the district court proceedings as well as the dearth of discovery conducted, the record on whether and how § 402 was implemented in Romano's case is nonexistent. As a result, we are unable to decide whether Romano's unavailability claim—which would excuse him from the PLRA's exhaustion requirement—has merit. We conclude a remand to the district court is necessary, so that the facts surrounding Romano's transfer, and the notice he was given, can be further developed.[1] Once the facts are established, the district court should reconsider whether grievance procedures were available to Romano, and either adhere to its original decision or allow his claim to go forward.

---

[1] On remand, we see no reason for the district court to inquire further into the facts supporting Romano's *other* argument for unavailability—that while he was still in DOCCS custody "his severe physical injuries, *plus* his severe mental illness" themselves rendered the grievance procedure unavailable to him. Pl.-App. Br. at 25-26 (emphasis in original). Nothing in Romano's submission to the district court is sufficient to create an issue of material fact as to whether he was physically or mentally incapable of filing a grievance during the five days he was in the Attica infirmary, or the eight days he was in an observation cell.

Accordingly, we **VACATE** the judgment of the district court.    We **REMAND** this case

to the district court for proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
