John G. Koeltl, District Judge:
*100 Plaintiff-appellee Ciara Reyes brought this action under 42 U.S.C. § 1983 alleging that her constitutional right to due process was violated when the defendants required her to serve an administratively imposed term of post-release supervision ("PRS") following her release from imprisonment after serving six-sevenths of two concurrent eight-year determinate sentences. The defendants-appellants Brian Fischer, the former Commissioner of the New York State Department of Correctional Services ("DOCS"); Anthony J. Annucci, the former Deputy Commissioner of DOCS; and Terrence X. Tracy, the former Chief Counsel for the New York State Division of Parole ("DOP"), bring this interlocutory appeal from the district court's order denying the defendants' motion for summary judgment on qualified immunity grounds and finding the defendants liable for violating Reyes's constitutional due process rights.
This appeal requires us to consider whether the defendants are entitled to qualified immunity for administratively imposing PRS prior to a judicial imposition of such supervision. More specifically, the appeal addresses whether the defendants are entitled to qualified immunity for two periods: the period of PRS before the conclusion of a determinate sentence when a plaintiff would otherwise be on conditional release, and the period following the end of a determinate sentence before a judicially imposed period of PRS when a plaintiff would not otherwise have been under supervision.
BACKGROUND
A.
In 1998, the New York State legislature enacted Penal Law § 70.45, which eliminated the parole system and provided that "[e]ach determinate sentence also includes, as a part therefor, an additional period of post-release supervision." Penal Law § 70.45(1) (McKinney 2005), amended by 2008 N.Y. Laws Ch. 141, § 3 (codified at N.Y. Penal Law § 70.45(1) (2009) ). Under that provision, the period of PRS to follow most offenses was five years. Id. § 70.45(2). Although § 70.45 required that PRS terms follow determinate prison sentences, in the years after the statute's enactment, "many judges did not include PRS as part of the sentence imposed." Betances v. Fischer, 304 F.R.D. 416, 423 (S.D.N.Y. 2015). Between the years 1998 and 2008, when offenders did not receive a judicially pronounced term of PRS, DOCS unilaterally calculated and imposed PRS terms without consulting the sentencing judge.[1] Id.
This Court first addressed the constitutionality of administratively imposed PRS terms in Earley v. Murray, 451 F.3d 71 (2d Cir. 2006) (" Earley I"), reh'g denied, 462 F.3d 147 (2d Cir. 2006) (" Earley II"). Earley I involved a prisoner who, while serving his sentence, learned that DOCS had added a period of PRS to his judicially pronounced determinate sentence. Id. at 73. Earley I held that administratively imposing PRS terms that were not judicially pronounced violates due process. Id. at 76 & n.1. This Court held that in cases where a PRS term was not judicially pronounced, the defendants had two options: "either to *101 have [the offenders] resentenced by the court for the imposition of PRS terms in a constitutional manner or to excise the PRS conditions from their records and relieve [the offenders] of those conditions." Vincent v. Yelich, 718 F.3d 157, 172 (2d Cir. 2013).
The defendants have appeared before this Court many times regarding their imposition of PRS, and their deliberate refusal to follow Earley I's holding is well documented. See, e.g., Hassell v. Fischer, 879 F.3d 41, 49 & n.15 (2d Cir. 2018) (noting that Fischer, Annucci, and Tracy understood Earley I's holding but decided not to follow it for many months); Betances v. Fischer, 837 F.3d 162, 167-68 (2d Cir. 2016) (same); Vincent, 718 F.3d at 168-69 (discussing Annucci). Defendants Fischer, Annucci, and Tracy each understood the holding of Earley I, and that it "applied to their departments" "but deliberately refused to" comply. Betances, 837 F.3d at 167-68. The defendants waited "to implement Earley I for many months after that decision was rendered." Hassell, 879 F.3d at 49.
In June 2008, the New York State Legislature passed Correction Law § 601-d to address the problem of DOCS's imposition of PRS terms that had not been pronounced by the sentencing judge. Section 601-d requires DOCS to notify the sentencing court of cases where the commitment order does not contain a term of PRS -- a signal to DOCS that PRS likely had not been judicially pronounced. N.Y. Correct. Law § 601-d(1), (2). When the sentencing court receives such notice from DOCS, § 601-d allows the court to hold a new hearing and impose a term of PRS, although it is not required to do so. See § 601-d(5).
B.
In 2001, Reyes was convicted of a violent assault and robbery, for which she received two concurrent eight-year determinate prison sentences. The sentencing judge pronounced Reyes's determinate sentences orally. The sentencing judge did not pronounce a term of PRS, nor was a term of PRS included in Reyes's Sentence and Order of Commitment.
In September 2007, DOCS calculated a five-year term of PRS and unilaterally imposed that term on Reyes. Reyes signed a DOP form entitled "Certificate of Release to Parole Supervision, Determinate - Post Release Supervision" which stated that Reyes was subject to a PRS term to commence on October 5, 2007, and to end on October 5, 2012.
Reyes's determinate prison sentences expired on November 27, 2008. However, New York law provides that an offender who serves six-sevenths of a determinate sentence and has earned sufficient good-time credit shall be released from prison early on conditional release, "if he or she so requests." N.Y. Penal Law § 70.40(1)(b) ; N.Y. Correct. Law § 803(c). A person released early on conditional release "shall be under the supervision of the state department of corrections and community supervision for a period equal to the unserved portion of the term." N.Y. Penal Law § 70.40(1)(b). Reyes met these conditions and was released from prison early on October 5, 2007 -- the date upon which she had completed six-sevenths of her determinate sentences. Her administratively imposed PRS sentence began that day.
On October 14, 2008, defendant Tracy referred the plaintiff to a state court judge as a "designated person" who may require resentencing pursuant to Correction Law § 601-d. On November 6, 2008, the plaintiff was taken into custody and incarcerated for a violation of the conditions of the five-year PRS term. While in custody for the *102 PRS violation, the maximum expiration date of Reyes's determinate sentences expired on November 27, 2008. On December 5, 2008 -- one week after her determinate sentences expired -- a state court judge resentenced Reyes under Correction Law § 601-d to two concurrent two-and-one-half year terms of PRS.[2]
Reyes brought this action under 42 U.S.C. § 1983 seeking money damages for alleged due process and double jeopardy[3] violations arising from the administratively imposed PRS term. This appeal focuses on two time periods: first, the time that elapsed from Reyes's release from prison on October 5, 2007, until her determinate sentences expired on November 27, 2008; and second, the following week of PRS that ensued after her determinate sentences expired on November 27, 2008, until she was resentenced to PRS by a judge on December 5, 2008.
The defendants moved for summary judgment, arguing that (1) Reyes's constitutional rights were not violated, (2) the defendants are entitled to qualified immunity, and (3) Reyes had not established that the defendants were personally involved in the alleged constitutional deprivation. Reyes v. Fischer, No. 13cv1239, 2017 WL 4350440, at *2, *8, *10-11 (E.D.N.Y. Mar. 16, 2017). Reyes also moved for summary judgment, arguing that the defendants violated her right to due process and that the defendants were not entitled to qualified immunity. Id. at *8. The district court found that the defendants violated Reyes's due process rights and were not entitled to qualified immunity. Id. at *12. The district court did not rule on the issue of damages because the parties had further discovery to conduct regarding the extent of Reyes's injuries. Id. The defendants moved for reconsideration, which the district court denied. Reyes v. Fischer, No. 13cv1239, 2017 WL 4350415, at *2 (E.D.N.Y. May 25, 2017). The defendants timely appealed from the denial of their motions for summary judgment on qualified immunity grounds.
DISCUSSION
A.
The rule that "[a]n order denying a motion for summary judgment is generally not a final decision within the meaning of [ 28 U.S.C.] § 1291 and is thus generally not immediately appealable" is inapplicable to denials of summary judgment based on a claim of qualified immunity. Plumhoff v. Rickard, 572 U.S. 765, 771, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014). Qualified immunity "is an immunity from suit rather than a mere defense to liability," and therefore its denial is immediately appealable under the collateral order doctrine.
*103 Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). This "Court has jurisdiction over interlocutory appeals based on qualified immunity when the defense can be decided based on questions of law," but this Court lacks jurisdiction over "the resolution of factual issues." Brown v. Halpin, 885 F.3d 111, 117 (2d Cir. 2018) (per curiam).
This Court reviews an order on a motion for summary judgment "de novo, construing all evidence in the light most favorable to the non-moving party." Betances, 837 F.3d at 171 (quoting Hubbs v. Suffolk Cty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) ). "We deny qualified immunity to government officials on summary judgment if (1) the facts ... taken in the light most favorable to the officials establish a violation of a constitutional right; and (2) the officials' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." Id. (alteration in original) (internal quotation marks omitted).
Government officials performing discretionary functions generally are afforded qualified immunity, and are therefore "shielded from liability for civil damages" when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "A right is 'clearly established' when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " Jackler v. Byrne, 658 F.3d 225, 242-43 (2d Cir. 2011) (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ).
Therefore, the questions on this appeal are twofold. First, we must decide whether the district court correctly found that the defendants violated Reyes's constitutional due process rights. Second, we must decide whether those rights were clearly established at the time of the defendants' conduct. We may consider these questions in any order. See Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The answers to these questions differ based on the relevant time period of Reyes's sentences. We first address the administratively imposed PRS Reyes served after her determinate sentences expired on November 27, 2008, until she was resentenced by a judge on December 5, 2008. Then, we address the administratively imposed PRS Reyes served after her initial release from imprisonment on October 5, 2007, until the expiration of her determinate sentences on November 27, 2008.
B.
In their reply brief, the defendants concede that they are not entitled to qualified immunity for the period between the end of Reyes's determinate sentences on November 27, 2008, and December 5, 2008 -- the date on which Reyes was resentenced to PRS by a judge. The concession is plainly correct.
" Earley I ruled that the federal-law principle that punishment for a crime could not properly be imposed administratively but could only be imposed by the court had been clearly established by the United States Supreme Court ...." Vincent, 718 F.3d at 167. Earley I, which was issued on June 9, 2006, "clearly established that where the court has not included PRS in a defendant's sentence, DOCS may not add that term without violating federal law." Id. at 168 ; see also Hassell, 879 F.3d at 48.
The defendants initially argued in this case that they took reasonable steps to *104 comply with Earley I and therefore are entitled to qualified immunity. However, this Court's recent holding in Hassell v. Fischer forecloses the argument that the defendants' response to Earley I was reasonable. 879 F.3d at 51. The defendants in that case -- Fischer, Annucci, and Tracy -- are the same defendants in this appeal. Id. at 49. In Hassell, this Court held that the defendants' delay in complying with Earley I was unreasonable, and therefore any steps the defendants took to comply with Earley I did not shield them from liability. Id. at 51 ; see Betances, 837 F.3d at 172 ("That the defendants [Fischer, Annucci, and Tracy] eventually took reasonable steps to comply with Earley I cannot excuse their unreasonable delay in doing so.").
Indeed, the defendants did not seek resentencing of Reyes under Correction Law § 601-d until October 14, 2008 -- more than two years after this Court decided Earley I and more than one year after October 5, 2007, when Reyes was released from prison and began serving her administratively imposed term of PRS. Because the right to be free from administratively imposed PRS was clearly established by Earley I and its progeny, and because the defendants did not take reasonable steps to comply with Earley I, the defendants are not entitled to qualified immunity for the week between the end of Reyes's determinate sentences on November 27, 2008, and the beginning of her PRS term that was pronounced by a judge on December 5, 2008. The parties originally disputed this point, but in light of this Court's decision in Hassell, the defendants now concede that they are not entitled to qualified immunity for that period.
C.
The defendants contend that because Reyes would have been subjected to conditional release if she had not been subjected to a term of PRS, Reyes cannot show that her due process rights were violated from her initial release on October 5, 2007, until her determinate sentences expired on November 27, 2008.
Reyes's right to be free from administratively imposed PRS following the expiration of her determinate sentences on November 27, 2008, until her resentencing on December 5, 2008, was clearly established at the time of the defendants' conduct. However, whether Reyes's constitutional rights were violated during the period of administratively imposed PRS that she served after her release from imprisonment on October 5, 2007, and before her determinate sentences ended on November 27, 2008, was an issue of first impression in this Circuit until this Court decided Hassell -- a decision that had not yet issued when the district court issued its order on the motions for summary judgment. 879 F.3d 41. As the district court correctly observed, "[t]he narrow question of whether a plaintiff, subjected to administratively-imposed PRS before the maximum expiration date of her determinate sentence, suffered a cognizable deprivation of liberty does not appear to have been addressed in this Circuit." Reyes, 2017 WL 4350440, at *8 n.10 (emphasis added). The plaintiffs in Betances, for example, were members of a class that was certified only for members "who were sentenced to prison in New York State for a fixed term that did not include a term of PRS, but who were nevertheless subjected to PRS after the maximum expiration dates of their determinate sentences." 304 F.R.D. at 427 (emphasis added) (internal quotation marks omitted) (certifying class). Similarly, Vincent involved plaintiffs who were subjected to PRS after being released from serving their prison sentences, *105 718 F.3d at 160-61, and Earley I involved a habeas petitioner who contested the "addition" of an administratively imposed PRS term to his judicially pronounced sentence, 451 F.3d at 72.
While this Court has confronted the question of administratively imposed PRS a number of times, Hassell was the first of these appeals in which a judgment had been entered awarding damages to a prisoner. 879 F.3d at 44. Hassell was also the first appeal that presented the question of whether PRS that is administratively imposed prior to the expiration of a determinate sentence violates due process. Id. at 51-52.
The facts of Hassell closely correspond to the facts in this case. Hassell involved the same defendants as this case, and presented a situation where the plaintiff, Hassell, was released from prison after serving six-sevenths of his determinate sentence because he had earned sufficient good-time credit to be released early. Id. at 45. Like Reyes, Hassell began serving an administratively imposed PRS term upon his early release from prison. Id.
Under New York law, when an offender earns sufficient good-time credit, that offender may be released on what is called "conditional release" and serve the remainder of his or her determinate sentence in the community. See N.Y. Correct. Law § 803(c) ; N.Y. Penal Law § 70.40(1)(b). The defendants state that if Reyes had not been released on PRS, then she would have been subjected to supervision under conditional release until the expiration of her determinate sentences. The same was true in Hassell; had Hassell not been subjected to a term of PRS, he would have been supervised under conditional release until the expiration of his determinate sentence. 879 F.3d at 45. The district court in Hassell found the defendants liable for violating Hassell's due process rights and awarded nominal damages of $600 plus attorney's fees. A portion of the nominal damage award pertained to the time period before Hassell's determinate sentence ended, during which he would otherwise have been subjected to conditional release, and a portion represented the time period between the expiration of Hassell's determinate sentence and his resentencing by a judge. Id. at 44.
On appeal, this Court vacated the portion of the nominal damages that pertained to the period of PRS that elapsed before Hassell's determinate sentence ended -- that is, when he would have otherwise been supervised under conditional release. This Court explained that for the period after Hassell was released from custody because of good-time credits, until the date on which his sentence terminated six months later, Hassell
would have been subject to conditional release during this time period had a PRS term not been imposed. Hassell has made no showing that the conditions of his PRS term were in any respect more onerous than those of conditional release would have been. Without any showing of an adverse consequence during [this period], Hassell has not suffered a denial of his due process rights during that period.
Id. at 52. This Court therefore vacated the portion of the nominal damages award attributable to that period. Id.
Hassell teaches that, to prevail in her suit for a due process violation, a plaintiff subjected to administratively imposed PRS must show that, for the period of time that the plaintiff would otherwise have been subjected to conditional release, the conditions of administratively imposed PRS were "more onerous." Id. This follows from the basic requirement that a plaintiff claiming a violation of due process must show a deprivation of liberty or property.
*106 See Swarthout v. Cooke, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011) (explaining that "standard analysis under [the Due Process Clause] proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient"); Albright v. Oliver, 510 U.S. 266, 275, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Scalia, J., concurring) (stating that the Due Process Clause of the Fourteenth Amendment "guarantees certain procedures as a prerequisite to deprivation of liberty"). It is only after determining that such a deprivation occurred that courts consider whether the procedure at issue "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Medina v. California, 505 U.S. 437, 445, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (internal quotation marks omitted).
Because Hassell had failed to show that the conditions of administratively imposed PRS were any more onerous than the deprivations Hassell would have encountered under conditional release, he failed to show any deprivation of liberty. Therefore, Hassell had not shown a constitutional violation and was not entitled to an award of even nominal damages for that period. Cf. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 n.11, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (explaining that "nominal damages ... are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury"); Patterson v. Coughlin, 905 F.2d 564, 568 (2d Cir. 1990) ("It is clear that where there has been a denial of due process, the victim is entitled at least to nominal damages.").
In this case, there are unresolved factual questions as to whether the conditions of administratively imposed PRS are more onerous than those of conditional release. In Hassell, this Court found that the plaintiff had not presented any evidence that the conditions of administratively imposed PRS were in fact more onerous than the conditions of conditional release. And in this case, the defendants contend that the conditions are no more onerous.
Unlike in Hassell, the parties have not yet conducted discovery with respect to the question of whether Reyes's PRS conditions were in fact more onerous than the conditions of conditional release would have been. Reyes, 2017 WL 4350440, at *11-12. The district court framed that question only as one of damages, rather than one of liability, and in that regard, the district court's order is inconsistent with Hassell, which made clear that the "more onerous" standard is not only a question of damages, but also one of liability. 879 F.3d at 52 ("Without any showing of an adverse consequence ... [the plaintiff] has not suffered a denial of his due process rights during that period."). Whether the two forms of supervision are equivalent is a question of fact that this Court lacks jurisdiction to decide on an interlocutory appeal. Brown, 885 F.3d at 117.
Factual questions that are crucial to the disposition of the defendants' qualified immunity defense remain -- specifically how the conditions of Reyes's PRS compare to those that would have been imposed under conditional release. We therefore must dismiss, for lack of jurisdiction, that part of the appeal that concerns the period of time during which Reyes would have been subject to conditional release.
CONCLUSION
We have considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or *107 without merit. For the reasons explained above, we AFFIRM the district court's order denying qualified immunity to the defendants for the week of administratively imposed PRS after the plaintiff's determinate sentences had expired. We DISMISS the appeal for lack of jurisdiction over the district court's denial of qualified immunity for the period between October 5, 2007, and November 27, 2008, when the plaintiff would otherwise have been subject to conditional release. We REMAND to the district court for further proceedings consistent with this opinion.

For a detailed history of DOCS's practice of administratively imposing PRS terms, see Betances v. Fischer, 837 F.3d 162, 164-71 (2d Cir. 2016).

The sentencing judge imposed these two-and-one-half year terms of PRS to follow the eight-year prison terms, and the judge made these sentences retroactive to May 22, 2001, the date that Reyes's determinate sentences began. The court-imposed release date was therefore April 5, 2010, rather than the original administratively imposed release date of October 5, 2012. The parties have made no arguments with respect to the retroactive nature of the judicially imposed PRS term. That the judicially pronounced term of PRS was imposed nunc pro tunc has no effect on this Court's consideration of the period of PRS that elapsed from Reyes's initial prison release on October 5, 2007, until her resentencing on December 5, 2008, because that time period elapsed before a judge imposed PRS.

Reyes's double jeopardy claim pertained to the period of PRS imposed by a judge on December 5, 2008, and was dismissed on a previous motion because Reyes did not "adequately allege the personal involvement of the[ ] defendants in the asserted double jeopardy violation." Rivera v. Annucci, No. 13cv1239, 2015 WL 590185, at *5 (E.D.N.Y. Feb. 11, 2015). The double jeopardy claim is not at issue on this appeal.