ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
On August 22, 2014, Plaintiff ShaVelle Lamarr Scott ("Plaintiff"), proceeding pro se , commenced this action pursuant to 42 U.S.C. § 1983, alleging that various officials employed at the Steuben County Jail (the "County Jail") violated his constitutional rights under the First, Eighth, and Fourteenth Amendments of the Constitution, as more specifically stated in the Complaint. (Dkt. 1). After being granted both leave to proceed in forma pauperis and leave to file an amended complaint (Dkt. 4), on March 5, 2015, Plaintiff filed his Amended Complaint (Dkt. 6). On October 8, 2015, the claims in the Amended Complaint were dismissed as against all named defendants, except for Sergeant Keith Kastner-Smith ("Sgt. Kastner-Smith"), Lieutenant Amy Bouck ("Lt. Bouck"), and Sergeant Lorrie Gardner ("Sgt. Gardner") (collectively, "Defendants"). (Dkt. 9).
Presently before the Court is Defendants' motion for summary judgment. (Dkt. 52). For the following reasons, Defendants' motion is granted, and Plaintiff's Amended Complaint is dismissed.
BACKGROUND [1]
Plaintiff was confined as an inmate at the County Jail from January 3, 2013, through January 17, 2014, and from May 28, 2014, through August 27, 2014. (Dkt. 52-12 at ¶ 9; see Dkt. 52-3 at ¶ 2). During his incarceration, Plaintiff received numerous "write-ups for violations of jail rules," and often made violent and threatening comments, statements, and hand-drawn pictures directed towards the County Jail's employees. (Dkt. 52-12 at ¶ 10; see Dkt. 52-3 at ¶¶ 3-4). The County Jail also provides inmates with "Inmate Medical Request Slips, which inmates may use to request medical or mental health care."
*548 (Dkt. 52-12 at ¶ 11; see Dkt. 52-3 at ¶¶ 23, 25). Plaintiff frequently submitted medical requests that included graphic or hostile language towards the jail officials or white people, and often used these slips as an outlet to voice his religious and nutritional preferences. (Dkt. 52-12 at ¶¶ 12-14, 16-18, 64-66; see Dkt. 52-3 at ¶¶ 26-28; see, e.g. , Dkt. 52-4 at 20-21, 24, 27, 32-35).
Plaintiff identifies as a Muslim, and specifically, "a member of the Nation of Islam." (Dkt. 52-12 at ¶ 19; see Dkt. 52-2 at 68:49-50). Plaintiff adheres to fasting traditions during the Islamic holy month of Ramadan, which require him to abstain from eating or drinking from dawn to dusk every day. (Dkt. 52-12 at ¶ 20; see Dkt. 52-2 at 67:43). The date of the alleged assault, July 10, 2014, occurred during Ramadan. (Dkt. 52-12 at ¶ 21; see Dkt. 52-2 at 67:43). On July 10, 2014, at about 3:30 a.m., Sgt. Kastner-Smith and Sgt. Gardner provided Plaintiff with his before-dawn meal, at which time Plaintiff complained that he had not been provided with any peanut butter. (Dkt. 52-12 at ¶¶ 23-24; see Dkt. 52-5 at ¶¶ 4, 7-8; Dkt. 52-6 at ¶¶ 4-5). Sgt. Kastner-Smith and Sgt. Gardner informed Plaintiff that they would speak with the kitchen staff when the staff arrived for work later that day. (Dkt. 52-12 at ¶ 5; see Dkt. 52-5 at ¶ 8; Dkt. 52-6 at ¶ 6).
At about 4:00 a.m., Officer Ryan Aldridge ("Officer Aldridge") began her security tour of Plaintiffs inmate housing unit when she discovered an inmate request slip under Plaintiff's cell door. (Dkt. 52-12 at ¶ 26; see Dkt. 52-8 at ¶ 6). Although Officer Aldridge attempted to interact with Plaintiff, Plaintiff did not respond. (Dkt. 52-12 at ¶ 26; see Dkt. 52-8 at ¶ 7). Plaintiff's inmate request slip complained about the lack of peanut butter provided with his meal, and then he proceeded to make hostile comments about white people and mentioned that another jail officer, Officer Hann, "got served" because of his conduct. (Dkt. 52-12 at ¶¶ 27-29; see Dkt. 52-4 at 4; Dkt. 52-8 at ¶¶ 8-9). The latter reference alluded to an inmate assault upon Officer Hann that occurred several days earlier. (Dkt. 52-12 at ¶ 29; see Dkt. 52-8 at ¶ 9). Plaintiff had also crossed out his vitriolic comments, apparently because he was concerned that the request might be "considered an emotionally driven complaint rather than a legitimate complaint." (Dkt. 52-2 at 69:56; see Dkt. 52-4 at 4).
After Sgt. Kastner-Smith was given the inmate request slip and had reviewed it, he returned to Plaintiff's cell, but Plaintiff refused to speak with him. (Dkt. 52-12 at ¶¶ 30-31; see Dkt. 52-5 at ¶¶ 11, 13; Dkt. 52-8 at ¶ 11). Sgt. Kastner-Smith then "slid a Grievance Form under the cell door" to Plaintiff. (Dkt. 52-12 at ¶ 31; see Dkt. 52-5 at ¶ 13). Sgt. Kastner-Smith asked Lt. Bouck to review the inmate request slip due to its content and because it was addressed to a lieutenant. (Dkt. 52-12 at ¶ 32; see Dkt. 52-5 at ¶ 14). At that point, the jail officials decided to transfer Plaintiff to a different housing unit "to maintain the safety and order of the facility." (Dkt. 52-12 at ¶ 32; see Dkt. 52-5 at ¶ 15).
Sgt. Kastner-Smith, Lt. Bouck, Sgt. Gardner, and Officer Eugene Kennedy ("Officer Kennedy") approached Plaintiff's cell, at which time Sgt. Kastner-Smith woke Plaintiff and ordered him to kneel in front of his bed, place his head on the mattress, and put his hands on his head to be handcuffed. (Dkt. 52-12 at ¶ 34; see Dkt. 52-5 at ¶¶ 16-17; Dkt. 52-6 at ¶¶ 9-10; Dkt. 52-8 at ¶ 13; Dkt. 52-9 at ¶¶ 3-5). Sgt. Kastner-Smith proceeded to handcuff Plaintiff (Dkt. 52-12 at ¶ 35; see Dkt. 52-5 at ¶ 17), and then, when Plaintiff refused to stand on his own, Officer Kennedy and Sgt. Kastner-Smith lifted Plaintiff to his feet (Dkt. 52-12 at ¶ 36; see Dkt. 52-5 at *549 ¶ 18; Dkt. 52-9 at ¶ 5). Sgt. Kastner-Smith held Plaintiffs left elbow and left wrist while the four officials escorted Plaintiff out of his cell. (Dkt. 52-12 at ¶ 37; see Dkt. 52-5 at ¶ 19; Dkt. 52-6 at ¶¶ 11-12; Dkt. 52-9 at ¶ 6).[2]
When Sgt. Kastner-Smith, Sgt. Gardner, Officer Kennedy, and Plaintiff arrived at the new cell, Plaintiff was ordered to reassume the kneeling position and to place his hands on his head once his handcuffs were removed, and then to remain kneeling until the officers closed the cell door. (Dkt. 52-12 at ¶ 39; see Dkt. 52-5 at ¶¶ 20-22; Dkt. 52-6 at ¶¶ 13-14; Dkt. 52-9 at ¶¶ 9-10). Once the handcuffs were removed, Plaintiff began to stand up, at which point Sgt. Kastner-Smith "placed [his] left hand on [Plaintiff's] hands and [his] right hand on [Plaintiff's] back to slow his momentum," and then instructed Plaintiff to return to the kneeling position. (Dkt. 52-5 at ¶ 23; see Dkt. 52-12 at ¶ 40). Plaintiff complied, and the officers left the cell. (Dkt. 52-12 at ¶ 40; see Dkt. 52-5 at ¶ 24; Dkt. 52-6 at ¶ 15; Dkt. 52-9 at ¶ 11).
Subsequently, Officer Aldridge and Sgt. Gardner retrieved Plaintiff's personal property, and then Officer Aldridge brought an "inventory document" to his new cell. (Dkt. 52-12 at ¶¶ 42-43; see Dkt. 52-8 at ¶¶ 16-17). At that time, Plaintiff "told Officer Aldridge that Sgt. Kastner-Smith had abused him, including slamming his head on the concrete wall and punching him in the head while placing him in the new cell." (Dkt. 52-12 at ¶ 43; see Dkt. 52-8 at ¶ 18). Officer Aldridge did not observe any indications of physical abuse or injury. (Dkt. 52-12 at ¶ 44; see Dkt. 52-8 at ¶ 19). Officer Michael Brotzman, who accompanied Officer Aldridge to Plaintiff's cell, also did not observe any signs of abuse. (Dkt. 52-12 at ¶ 45; see Dkt. 52-10 at ¶ 12; see also Dkt. 52-8 at ¶ 18).
After the events of July 10, 2014, Plaintiff "submitted several Medical Request Slips discussing what he alleged to be an attack by Sgt. Kastner-Smith." (Dkt. 52-12 at ¶ 57; see, e.g. , Dkt. 52-4 at 30-31, 36, 41, 48, 52). In addition, Plaintiff drafted a letter to a state court judge in which he recounted the alleged assault. (Dkt. 52-12 at ¶ 57; see Dkt. 52-4 at 17-18). Major Matthew P. Whitmore ("Major Whitmore") of the Steuben County Sheriffs Office, and the "Chief Administrator at the County Jail" (Dkt. 52-3 at ¶ 1), searched the County Jail's records and did not find any record denoting the filing of a formal grievance by Plaintiff in relation to this matter (id. at ¶ 22; see Dkt. 52-12 at ¶ 56). However, in response to Plaintiff's letter to the state court judge, Major Whitmore requested that Lieutenant David Sutton ("Lt. Sutton") investigate Plaintiff's complaints and interview Plaintiff and the officers involved. (Dkt. 52-12 at ¶ 59; see Dkt. 52-3 at ¶¶ 9-14; see also Dkt. 52-11 at ¶¶ 2, 8-9). Ultimately, Major Whitmore and Lt. Sutton determined that Plaintiff was not mistreated at any point during his transport between jail cells, and that Sgt. Kastner-Smith used "no more force than necessary to escort Plaintiff" and to ensure his compliance with lawful orders. (Dkt. 52-3 at ¶ 15; Dkt. 52-11 at ¶ 11; see Dkt. 52-12 at ¶ 59). Major Whitmore issued a written response to Plaintiff, dated July 24, 2014, indicating that he and Lt. Sutton "had investigated Plaintiff's claims and found them to be without merit." (Dkt. 52-12 at ¶ 74; see Dkt. 52-3 at ¶ 33; Dkt. 52-4 at 89).
PROCEDURAL HISTORY
Plaintiff commenced this action on August 22, 2014. (Dkt. 1). After being granted both leave to proceed in forma pauperis *550 and leave to file an amended complaint (Dkt. 4), Plaintiff filed an Amended Complaint on March 5, 2015, which remains the operative pleading in this action (Dkt. 6). Plaintiff's allegations stand in stark contrast to the evidence in the record. Plaintiff claims that on July 10, 2014, he was subject to a brutal assault by Sgt. Kastner-Smith, and that Lt. Bouck and Sgt. Gardner failed to protect him. (See id. at 11, 14). Specifically, Plaintiff alleges that Sgt. Kastner-Smith initially failed to wake him up in the early morning, and then said, "Fuck this [s]tupid [n]igger." (Id. at 15). When Sgt. Kastner-Smith returned, he allegedly awakened Plaintiff by slamming his face against the prison walls. (Id. at 11). Sgt. Kastner-Smith then escorted Plaintiff into a different jail cell, while he allegedly bent and contorted Plaintiff's hand and fingers. (Id. at 14). In addition, Sgt. Kastner-Smith allegedly threatened Plaintiff and proceeded, again, to slam his face into the concrete walls. (Id. ). Lt. Bouck allegedly made light of the matter by making sarcastic remarks. (See id. at 14-15). Sgt. Gardner was present and did not act to stop the alleged assault. (Id. at 14). Plaintiff claims that this assault was committed in retaliation for his previous filing of a grievance against Officer Hann. (Id. at 17).
Plaintiff also attached miscellaneous "additional documents" as separate filings to the Amended Complaint. (Dkt. 7; Dkt. 8). The exact origin of these documents is unclear. However, they appear to relate to Defendants as well as parties not subject to the present action, and include Plaintiff's recitation of the events of July 10, 2014, as well as a number of other alleged confrontations. The Court finds these submissions largely irrelevant to the extent that Plaintiff raises issues pertinent to individuals not named as defendants in this lawsuit and that are unrelated to his claims against Defendants.
After discovery concluded (see Dkt. 49), Defendants filed the pending motion for summary judgment (Dkt. 52). Plaintiff opposed the motion, submitting only his own assertions declared under penalty of perjury. (Dkt. 54); see 28 U.S.C. § 1746(2).
DISCUSSION
I. Defendants' Motion for Summary Judgment
A. Legal Standard
Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court concludes that no rational jury could find in favor of that party. Scott v. Harris , 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ).
"Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the 'evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.' " Rowe v. Wal-Mart Stores, Inc. , 11 F.Supp.2d 265, 266 (W.D.N.Y. 1998) (quoting Celotex Corp. v. Catrett , 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing *551 that there is a genuine issue for trial. ' " Caldarola v. Calabrese , 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. , 475 U.S. at 586-87, 106 S.Ct. 1348 ). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
B. Plaintiff Failed to Exhaust his Administrative Remedies
1. Legal Standard
The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle , 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In order to satisfy this requirement, the evidence must demonstrate the "proper exhaustion of administrative remedies." Woodford v. Ngo , 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.' " Jones v. Bock , 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). As such, "[t]he exhaustion inquiry ... requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Espinal v. Goord , 558 F.3d 119, 124 (2d Cir. 2009). "Exhaustion is mandatory-unexhausted claims may not be pursued in federal court." Amador v. Andrews , 655 F.3d 89, 96 (2d Cir. 2011).
Pursuant to the Second Circuit's decision in Hemphill v. New York , 380 F.3d 680 (2d Cir. 2004), a failure to exhaust administrative remedies may only be excused where: "(1) the administrative remedies were not in fact available; [or] (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances justify the prisoner's failure to comply with administrative procedural requirements.' " Dabney v. Pegano , 604 Fed.Appx. 1, 3 (2d Cir. 2015) (quoting Hemphill , 380 F.3d at 686 ). However, the third prong of Hemphill , relating to "special circumstances," was abrogated by the Supreme Court's decision in Ross v. Blake , --- U.S. ----, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016). Williams v. Corr. Officer Priatno , 829 F.3d 118, 123 (2d Cir. 2016). The inquiry which used to be under the third prong of Hemphill , is now considered "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id.
2. Plaintiff Failed to File a Formal Grievance Form and Never Pursued the Available Administrative Appellate Process to Completion
Defendants correctly note that Plaintiff's Amended Complaint fails to indicate whether or not he exhausted his administrative remedies. (See Dkt. 52-13 at 7-8). Although Plaintiff affirmatively stated that he had submitted an inmate grievance in his initial Complaint-noting that he did not file an appeal because his "complaints are not being returned to [him] via determination/response" (Dkt. 1 at 5)-this allegation is absent from the Amended Complaint (Dkt. 6 at 11). Even still, the Court does not place great emphasis on this fact because the "failure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in *552 their complaints." Jones , 549 U.S. at 216, 127 S.Ct. 910.
Nonetheless, Defendants also submit the affidavit of Major Whitmore (Dkt. 52-3), who attached as an exhibit a copy of the relevant section of the inmate informational handbook that sets forth the County Jail's grievance procedures (id. at ¶ 17; see Dkt. 52-4 at 11-12). Major Whitmore summarized the County Jail's grievance process as follows:
(1) The inmate first makes an informal attempt to resolve the issue with the Housing Unit Officer[.]
(2) If the inmate is not satisfied with the Officer's response, he may then request a special "Grievance Form," which is made readily available on each housing unit and in the jail law library. Submission of other papers, including Inmate Request Slips and Medical Request Slips, is not an authorized method for invoking the grievance procedure. The inmate must complete a Grievance Form, and he must do so within five days from the date of the occurrence giving rise to the grievance.
(3) Within five days of receipt of the Grievance, the inmate receives a written determination from the Grievance Coordinator.
(4) The inmate has two business days to appeal the Grievance Coordinator's decision, in writing, to the Jail Superintendent.
(5) Within five business days, the inmate receives a written determination from the Jail Superintendent.
(6) Finally, the inmate has three business days to appeal the Jail Superintendent's determination, in writing, to the Commission of Correction Citizen's Policy and Complaint Review Council ("CPCRC"), by completing the appropriate portion of the Grievance Form and returning it to the Grievance Coordinator.
(Dkt. 52-3 at 4-5).
As noted above, Plaintiff submitted numerous inmate medical requests that described the alleged assault. (See Dkt. 52-12 at ¶ 57; see, e.g. , Dkt. 52-4 at 30-31, 36, 41, 48, 52). However, an inmate medical request slip is not an approved method for filing a grievance under the County Jail's procedures. (See Dkt. 52-3 at ¶ 18; Dkt. 52-4 at 11 (noting that an inmate "must complete the 'Grievance Form' detailing the circumstances" of the issue complained of (emphasis added) ) ); see also Zafuto v. Okeefe , No. 11-CV-916S, 2014 WL 297102, at *4 (W.D.N.Y. Jan. 27, 2014) ("Zafuto also argues that he exhausted his remedies by informal means. He contends that two requests for medical treatment in late February effectively 'mirror the grievance and appeals process of the [Department of Corrections and Community Supervision].' But this argument is foreclosed by Woodford ...." (citation omitted) ); Smith v. City of New York , No. 12 Civ. 3303 (CM), 2013 WL 5434144, at *13 (S.D.N.Y. Sept. 26, 2013) ("It is well settled that complaints and communications made outside of formal grievance procedures do not satisfy the PLRA's exhaustion requirement."); Cruz v. DeMarco , No. 12-CV-4277 (JFB) (GRB), 2013 WL 4719086, at *7 (E.D.N.Y. Sept. 3, 2013) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules, and thus, submitting sick call requests [does] not properly exhaust [an agency's] available administrative remedies." (quotation marks and citations omitted) ); Williams v. Metro. Det. Ctr. , 418 F.Supp.2d 96, 101 (E.D.N.Y. 2005) ("While the complaint shows that [the plaintiff] did make efforts to gain medical attention through letters and conversations with *553 [the warden] and the medical staff, these efforts do not include the required steps of the PLRA's administrative remedy process."). In Macias v. Zenk , 495 F.3d 37 (2d Cir. 2007), the plaintiff argued that his filing of two administrative tort claims and his "more than 20 sick calls complaining about his lack of medical treatment" sufficiently satisfied the exhaustion doctrine, even though he did not complete the formal grievance procedures. Id. at 42-43. The Second Circuit rejected this argument, stating that simply " '[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought[ ]' does not constitute 'proper exhaustion' under Woodford. " Id. at 44 (citation omitted). The same rationale applies with equal force to Plaintiff's inmate medical slips and his letter complaint to the state court judge, which detail the nature of the alleged assault, but are not proper mechanisms for commencing the grievance process pursuant to the County Jail's procedures.
Plaintiff offers no evidence that raises a genuine issue of material fact as to whether he actually filed a formal grievance form pursuant to the County Jail's grievance procedures. Plaintiff does not even declare that he followed the grievance procedures in his reply submissions. Indeed, Defendants' submissions indicate that Plaintiff not only received a copy of the inmate informational handbook, which outlines the proper procedure for filing grievances (Dkt. 52-4 at 10-12, 14-15), but he also has apparently filed nine formal grievances unrelated to this matter (Dkt. 52-3 at ¶ 21; see Dkt. 52-2 at 73-79, 81-82); see also Cruz , 2013 WL 4719086, at *7 n.3 ("Although not dispositive of the issues presented in this case, the Court notes that [the] plaintiff is familiar with the proper procedure for filing a grievance, as he has submitted four grievances related to other subject matters."). As such, any informal complaint or communication that may have placed Defendants on notice of his grievance, such as the inmate medical request slips or the letter to the state court judge, is, standing alone, insufficient under Woodford. See, e.g., Macias , 495 F.3d at 44 ; Smith , 2013 WL 5434144, at *13 ; Cruz , 2013 WL 4719086, at *7.
However, Defendants' submissions also indicate that Major Whitmore responded to Plaintiff's informal complaints. (Dkt. 52-3 at ¶ 33; Dkt. 52-4 at 89). Plaintiff fails to argue that Major Whitmore's response could be construed as evidence that his letter complaint to the state court judge was considered an acceptable initiation of formal grievance procedures. Nonetheless, even if Plaintiff's letter complaint considered in tandem with Major Whitmore's response could be construed in such a manner, the Court still finds that Plaintiff failed to file an appeal to the CPCRC as required by the County Jail's grievance process. (Dkt. 52-4 at 12); see Vann v. Fischer , No. 11 Civ. 1958 (KPF), 2014 WL 4188077, at *23 (S.D.N.Y. Aug. 25, 2014) (stating that "[e]ven were the letter from the superintendent to be construed as a response to a grievance as contemplated by the [Department of Corrections and Community Supervision] regulations," the plaintiff "never appealed that grievance"); Salvatierra v. Connolly , No. 09 Civ. 3722 (SHS) (DF), 2010 WL 5480756, at * 17 (S.D.N.Y. Sept. 1, 2010) (stating that "even if [the p]laintiff's initial letters were sufficient to substitute for an initial grievance," exhaustion was not satisfied because he failed to, among other things, "appeal the matter"), report and recommendation adopted , No. 09 Civ. 3722 (SHS), 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011) ; Banks v. Mosley , No. 06 Civ. 4975 (DAB)(MHD), 2009 WL 1159191, at *3-4 (S.D.N.Y. Apr. 28, 2009) (assuming that the plaintiff's " 'informal complaint' " that "triggered an investigation and written response" constituted "a formal grievance," but finding that the plaintiff failed to exhaust "his *554 administrative remedies since he did not pursue the available appellate process").
Here, Major Whitmore avers, as the Chief Administrator of the County Jail, that the County Jail's records "indicate Plaintiff did not submit an appeal of [his letter response] to the [CPCRC]." (Dkt. 52-3 at ¶ 33). Furthermore, Defendants' counsel, William D. Vandelinder, Esq. ("Vandelinder"), an attorney with the law firm of Barclay Damon, LLP, affirmed that his "office submitted a Freedom of Information Law ('FOIL') request to the Records Access Officer with the New York State Commission of Correction." (Dkt. 52-1 at ¶ 11). This application requested "materials Plaintiff filed with the [CPCRC] between June and September of 2014." (Id. ; see Dkt. 52-2 at 71-72). The application returned records of only one appeal, which "involved access to religious advisors, not an assault by a corrections officer." (Dkt. 52-1 at ¶ 11; see Dkt. 52-2 at 73-82). Taken together, Major Whitmore's averments and Vandelinder's declaration and supporting documentation prima facie establish that Plaintiff did not file any appeal with the CPCRC that related to the alleged assault at issue. See Mims v. Yehl , No. 13-CV-6405-FPG, 2014 WL 4715883, at *6 (W.D.N.Y. Sept. 22, 2014) (finding that the defendants established that no final administrative appeal had been taken where the custodian of records for the appeals committee averred that no appeal exists regarding the alleged incident at issue); see generally Banks , 2009 WL 1159191, at *4 ("Since the grievance program permitted [the] plaintiff to appeal the adverse initial decision and he chose not to do so, it follows that he did not comply with section 1997e(a).").
3. Plaintiff Failed to Demonstrate that His Failure to Exhaust Administrative Remedies Should be Excused
If defendants carry their initial burden of establishing that "a grievance process exists and applies to the underlying dispute[,]... administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors ... rendered a nominally available procedure unavailable as a matter of fact." Hubbs v. Suffolk Cty. Sheriff's Dep't , 788 F.3d 54, 59 (2d Cir. 2015) (citations omitted). In other words, "[a]fter the defendant satisfies [its] burden, the plaintiff may attempt to overcome the PLRA's exhaustion requirement by demonstrating one of the Hemphill exceptions." Powell v. Schriro , No. 14 Civ. 6207 (KPF), 2015 WL 7017516, at *6 (S.D.N.Y. Nov. 12, 2015) ; see Perry v. Rupert , No. 9:10-CV-1033 (LEK/TWD), 2013 WL 6816795, at *4 (N.D.N.Y. Dec. 20, 2013) (same); see also Bolton v. City of New York , No. 13-CV-5749 (RJS), 2015 WL 1822008, at *2 (S.D.N.Y. Apr. 20, 2015) (stating that the plaintiffs' Rule "56.1 statements also fail to show that they qualify for one of the Hemphill exemptions to the PLRA exhaustion requirement"); Banks v. United States , No. 10 Civ. 6613 (GBD) (GWG), 2011 WL 4100454, at *11 (S.D.N.Y. Sept. 15, 2011) ("[The plaintiff] has not demonstrated that he should be excused from having to comply with the PLRA's exhaustion requirements."), report and recommendation adopted , No. 10 Civ. 6613 (GBD) (GWG), 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011) ; Hill v. Donoghue , No. 08-CV-1045 (JS) (AKT), 2010 WL 3924858, at *1 (E.D.N.Y. Sept. 30, 2010) ("[A] prisoner plaintiff may seek to counter [the] defendants' contention that the prisoner has failed to exhaust available administrative remedies.").
In this case, Plaintiff fails to raise a triable issue of fact that these administrative remedies were unavailable to him or that Defendants waived or should be estopped from raising this affirmative defense. Although Plaintiff alleged that he did not receive any response to his grievances *555 in his initial Complaint (Dkt. 1), Plaintiff provides no evidence that he even submitted a formal grievance. Furthermore, even if this allegation was true, it would not excuse Plaintiff from appealing his grievance to the next stage of the grievance procedure. See Cicio v. Wenderlich , No. 13-CV-195S, 2017 WL 1437206, at *5 (W.D.N.Y. Apr. 24, 2017) ("Even assuming that [the plaintiff] filed an initial grievance-an assumption directly contrary to [the Department of Corrections and Community Supervision]'s records-it is well settled that the lack of response to that grievance does not excuse [the plaintiff]'s failure to appeal to the next level. [The plaintiff] was thus required to appeal his grievance despite the alleged lack of response." (footnote omitted) ), aff'd , No. 17-1523-PR, 2018 WL 1357387 (2d Cir. Mar. 16, 2018) ; Mims , 2014 WL 4715883, at *6 ("Assuming that [the p]laintiff did file a grievance regarding the August 10, 2012 incident, [the p]laintiff was still required to file an appeal with the [agency committee] even if he never received a decision on the grievance he claims to have filed."); Williams v. Hupkowicz , No. 04-CV-0051, 2007 WL 1774876, at *4 (W.D.N.Y. June 18, 2007) ("Even assuming that an inmate received no timely official response as contemplated by the regulations to a grievance at any stage in the inmate grievance process, the inmate could nevertheless appeal such grievance to the next level, and the failure to do so constitutes a failure to exhaust his administrative remedies as required under the PLRA.").
In addition, Defendants also submit Plaintiffs response to Defendants' motion to compel disclosure. (Dkt. 52-1 at ¶ 8; see Dkt. 52-2 at 56-59; see also Dkt. 43). In his response, Plaintiff states that "[t]he complaint itself explains how Defendants refused [him] medical [and] their coworkers destroyed [his] grievances...." (Dkt. 52-2 at 56). Plaintiff never once states in his Amended Complaint that he filed a formal grievance arising from the alleged assault at issue, and that it was subsequently destroyed by Defendants or any other jail staff member. The Court notes that, in the various additional documents he filed as part of his Amended Complaint, Plaintiff claims that non-party Officer John Brois "repeatedly ripped [his] grievances up and tras [sic] talked [him]." (Dkt. 7 at 1). It is unclear whether this statement refers to any grievance or appeal papers arising from the incident at issue. However, even assuming that it was, "[c]ourts have consistently held ... that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." Rosado v. Fessetto , No. 9:09-CV-67 (DNH/ATB), 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010), report and recommendation adopted , No. 9:09-CV-67, 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010) ; see Rodriguez v. Cross , No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations."), report and recommendation adopted , No. 9:15-CV-1079 (GTS/CFH), 2017 WL 2790530 (N.D.N.Y. June 27, 2017) ; Khudan v. Lee , No. 12-CV-8147 (RJS), 2016 WL 4735364, at *6 (S.D.N.Y. Sept. 8, 2016) (stating that the plaintiff's "stand alone" accusations that prison officials "tampered with his grievances and his mail, and threatened to kill him when he attempted to learn the status of his grievance" did not raise a triable question of fact), appeal dismissed , No. 16-3534, 2016 WL 10100723 (2d Cir. Dec. 8, 2016) ; Mims , 2014 WL 4715883, at *4 ("[The p]laintiff's wholly conclusory and unsupported allegations that grievances are tampered with at Gowanda Correctional Facility do not create a material issue of *556 fact in this case."); Nunez v. Goord , 172 F.Supp.2d 417, 428 (S.D.N.Y. 2001) (finding that the plaintiff's "stand alone and unsupported" allegations that his grievances were either lost or destroyed did not defeat the defendants' entitlement to summary judgment). Accordingly, Plaintiff's conclusory and unsupported allegation that certain unidentified grievances were destroyed fails to raise a genuine issue of material fact in this case.
In sum, the Court finds that irrespective of whether Plaintiff's letter complaint and medical request slips could be considered formal grievances in light of Major Whitmore's responsive letter, there is no evidence that Plaintiff sought to appeal Major Whitmore's determination to the CPCRC or that this appellate process was effectively unavailable to him. See Hubbs , 788 F.3d at 59 ; Hemphill , 380 F.3d at 686. In light of Defendants' evidence demonstrating that no record of any such appeal exists, and Plaintiff's failure to provide any evidence that he either filed an appeal or was impeded from doing so, the Court concludes that Plaintiff failed to exhaust his administrative remedies as set forth by the County Jail's procedures. Accordingly, Defendants have established prima facie entitlement to judgment as a matter of law on the issue of administrative exhaustion, and Plaintiff has failed to raise a genuine issue of material fact; therefore, Defendants' motion for summary judgment is granted.
4. Plaintiff's Complaint is Dismissed With Prejudice
The remaining question is whether Plaintiff's complaint should be dismissed with or without prejudice. Generally, a dismissal for failure to exhaust administrative remedies is without prejudice. See Snider v. Melindez , 199 F.3d 108, 111-12 (2d Cir. 1999) ("Failure to exhaust administrative remedies is often a temporary, curable, procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit...."); see also Bridgeforth v. Bartlett , 686 F.Supp.2d 238, 239-40 (W.D.N.Y. 2010) ("In some circumstances, where a prisoner has failed to satisfy the exhaustion requirement, courts will dismiss the complaint without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint."). "On the other hand, dismissal with prejudice is appropriate where 'administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust.' " Rivera v. Anna M. Kross Ctr. , No. 10 Civ. 8696 (RJH), 2012 WL 383941, at *7 (S.D.N.Y. Feb. 7, 2012) (quoting Berry v. Kerik , 366 F.3d 85, 88 (2d Cir. 2004) ); see Rodriguez v. Westchester Cty. Jail Corr. Dep't , 372 F.3d 485, 487 (2d Cir. 2004) ("[A] prisoner's complaint should be dismissed with prejudice where administrative remedies were available for a reasonable length of time and were not exhausted 'in the absence of any justification.' " (quoting Berry , 366 F.3d at 88 ) ).
Here, the alleged assault occurred on July 10, 2014. Plaintiff was transferred from the County Jail on August 27, 2014. (Dkt. 52-3 at ¶ 32). Accordingly, Plaintiff had a little over a month-and-a-half to exhaust his administrative claims while confined at the County Jail. In many cases where a complaint is dismissed with prejudice, the plaintiff inmate had the benefit of several more months' time than Plaintiff to exhaust administrative remedies. See, e.g., Weidman v. Wilcox , No. 6:12-CV-6524 (MAT), 2014 WL 1056416, at *4 (W.D.N.Y. Mar. 17, 2014) (finding that the plaintiff *557 had "ample opportunity to exhaust his administrative remedies" where the alleged incident occurred in "early September 2012, and he was not released to parole supervision until March 2013"); Finger v. Superintendent McFinnis , No. 99 Civ. 9870 (LTS)(THK), 2004 WL 1367506, at *5 (S.D.N.Y. June 16, 2004) ("[A]lmost eight months passed between the date of [the p]laintiff's discharge and the date the original complaint was filed during which he could have filed a grievance."); see also Toomer v. County of Nassau , No. 07-CV-01495 (JFB/ETB), 2009 WL 1269946, at *9 (E.D.N.Y. May 5, 2009) ("[The p]laintiff had many months to pursue his grievance against prison officials for their alleged failure to protect him and, thus, had ample opportunity to use the administrative procedures."). In addition, the Second Circuit's decision in Berry did not consider whether dismissal should be with or without prejudice "where only a brief interval elapses between the episode giving rise to the prisoner's complaint and the prisoner's transfer to the custody of another jurisdiction." Berry , 366 F.3d at 88 n.3. Nonetheless, this Court finds that Plaintiff's "administrative remedies were available for a reasonable length of time and were not exhausted." Rodriguez , 372 F.3d at 487.
Pursuant to the County Jail's grievance process, it should take no longer than twenty business days from the filing of a grievance to the filing of an appeal with the CPCRC of the Jail Superintendent's unfavorable decision. (See Dkt. 52-3 at ¶ 18; Dkt. 52-4 at 11-12). Although the CPCRC may require additional time to reach a decision (Dkt. 52-4 at 12 ("The CPCRC will respond with a written determination within 45 days of the receipt of your grievance.") ), an inmate must take no further action once an appeal to the CPCRC is filed. As such, the Court finds that Plaintiff had sufficient time to file an inmate grievance and pursue all available administrative appeals prior to his transfer from the County Jail. See Burns v. Moore , No. 99 Civ. 0966 (LMM)(THK), 2002 WL 91607, at *7 (S.D.N.Y. Jan. 24, 2002) (dismissing the complaint with prejudice for failure to exhaust administrative remedies where those remedies were no longer available to him and he had two months from the date of the alleged incident to pursue them); cf. Lopez v. City of New York , No. 05 Civ. 10321 (NRB), 2009 WL 229956, at *3 (S.D.N.Y. Jan. 30, 2009) ("[The] plaintiff was never in jail for a period greater than the length of time that an inmate has to file a grievance.... Often, [the] plaintiff was incarcerated for just a few days and never more than fourteen."); Mobley v. O'Gara , No. 02-CV-6605 (DRH)(MLO), 2006 WL 197185, at *4 n.2 (E.D.N.Y. Jan. 23, 2006) (distinguishing Burns where the plaintiff "alleges that he did file a complaint with the grievance office and that he was released just days later"). Furthermore, even if Major Whitmore's response to Plaintiff's letter complaint constituted an appealable determination to the CPCRC, Plaintiff had ample opportunity to file the required appeal. (Compare Dkt. 52-3 at ¶ 32 (noting that Plaintiff was transferred on August 27, 2014), with Dkt. 52-4 at 89 (Major Whitmore's response, dated July 24, 2014) ). Instead, the evidence in the record demonstrates that not only did Plaintiff fail to file a single formal grievance form, but he also failed to ever attempt to appeal any decision or non-decision related to the alleged assault.
Therefore, Plaintiff's action is dismissed with prejudice.
CONCLUSION
For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 52) is granted, and Plaintiff's Amended Complaint (Dkt. 6) is dismissed with prejudice.
*558 The Clerk of Court is directed to close this case.
SO ORDERED.

Although Plaintiff opposed Defendants' motion for summary judgment (see Dkt. 54), he failed to submit a statement of undisputed material facts controverting Defendants' Rule 56 statement as required by the Local Rules of this District. See L.R. Civ. P. 56(a)(2). The Court may not simply rely upon an uncontroverted statement of undisputed material facts submitted by the movant; "[i]t must be satisfied that the citation[s] to evidence in the record supports the assertion." Vt. Teddy Bear Co. v. 1-800 Beargram Co. , 373 F.3d 241, 244 (2d Cir. 2004). Furthermore, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co. , 258 F.3d 62, 73 (2d Cir. 2001). Accordingly, the following facts are taken from Defendants' Local Rule 56 statement of undisputed material facts and are "deemed to be admitted" to the extent they are supported by admissible evidence in the record. See, e.g., Gubitosi v. Kapica , 154 F.3d 30, 31 n.1 (2d Cir. 1998) ; see also Fleming v. Deaconess Hosp. , No. 02-CV-934C(SC), 2006 WL 2792293, at *1 n.1 (W.D.N.Y. Sept. 27, 2006) (finding that the facts in the defendant's uncontroverted statement of undisputed material facts were to be admitted, but stating that "[t]hese facts will be supplemented, as warranted, by reference to the underlying documents upon which the statement of undisputed material facts is based").

Lt. Bouck entered a door near the County Jail's control room, and did not escort Plaintiff to his new cell. (Dkt. 52-12 at ¶ 38; see Dkt. 52-6 at ¶ 11).